UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
VINCENT RAGONE,                                    Civil Action No.: 13 CV 04604
                                                   (KPF)(KNF)
                        Plaintiff,

        -against-

AETNA LIFE INSURANCE COMPANY,

                        Defendant.
---------------------------------------------------------------X

# DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION REGARDING THE APPROPRIATE STANDARD OF REVIEW

SEDGWICK LLP
225 Liberty Street, 28th Floor
New York, New York 10281-1008
T: 212.422.0202 | F: 212.422.0925
*Attorneys for Defendant Aetna Life Insurance Company*

*Michael H. Bernstein*
*Matthew P. Mazzola*
        *Of Counsel*

# **TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ..................................................................................................1

PROCEDURAL HISTORY..........................................................................................................3

PERTINENT PLAN TERMS .......................................................................................................3

      A.      Contents of the Policy ........................................................................................4

      B.      Grant of Discretionary Authority .......................................................................5

      C.      Certificate of Coverage for Tradition's LTD Plan ..............................................5

      D.      Master Application Form ...................................................................................6

ARGUMENT.................................................................................................................................6

    POINT I

    THE GROUP POLICY CONTAINS THE APPROPRIATE GRANT OF
    DISCRETIONARY AUTHORITY.................................................................................6

    POINT II

    THE ENTIRE GROUP POLICY CONSTITUTES THE UNIVERSE OF
    RELEVANT PLAN DOCUMENTS UNDER ERISA ...................................................7

    POINT III

    RAGONE WAS NOT ENTITLED TO ACTUAL NOTICE OF THE PLAN'S
    GRANT OF DISCRETIONARY AUTHORITY TO AETNA ....................................10

    POINT IV

    THE LTD CERTIFICATE OF COVERAGE INCORPORATES THE TERMS OF
    THE GROUP POLICY BY REFERENCE ..................................................................11

    POINT V

    TRADITION'S APPLICATION FOR COVERAGE TO AETNA DOES NOT
    HAVE ANY EFFECT ON THE GRANT OF DISCRETIONARY AUTHORITY IN
    THE GROUP POLICY ................................................................................................12

CONCLUSION............................................................................................................................14

## TABLE OF AUTHORITIES

Page(s)

### Cases

*Burke v. PriceWaterHouseCoopers LLP Long Term Disability Plan*,
572 F.3d 76 (2d Cir. 2009) .................................................................................................9

*CIGNA Corp.* v. *Amara*,
131 S.Ct. 1866 (2011) .......................................................................................................10

*Conkright* v. *Frommert*,
130 S.Ct. 1640 (2010) ..................................................................................................... 1, 7

*Curtiss-Wright Corp.* v. *Schoonejongen*,
514 U.S. 73 (1995) ..............................................................................................................9

*Donovan v. Dillingham*,
688 F.2d 1367 (11th Cir. 1982) ...................................................................................... 8, 9

*Firestone Tire and Rubber Co.* v. *Bruch*,
489 U.S. 101 (1989) ........................................................................................................ 1, 6

*Hobson* v. *Metropolitan Life Ins. Co.*,
574 F.3d 75 (2d Cir. 2009) ............................................................................................. 6, 7

*Kinstler* v. *First Reliance Standard Life Ins. Co.*,
181 F.3d 243 (2d Cir. 1999) ...............................................................................................7

*Mugan v. Hartford Life Group Ins. Co.*,
765 F.Supp.2d 359 (S.D.N.Y. 2011) ............................................................................... 6, 7

*Pagan* v. *NYNEX Pension Plan*,
52 F.3d 438 (2d Cir. 1995) .................................................................................................7

*Raybourne v. Cigna Life Ins. Co. of New York*,
576 F.3d 444 (7th Cir. 2009) ............................................................................................12

*Scheirer* v. *NMU Pension & Welfare Plan*,
585 F. Supp. 76 (S.D.N.Y. 1984) .......................................................................................9

*Thurber v. Aetna Life Insurance Company*,
712 F.3d 654 (2d Cir. 2013) .......................................................................................... 2, 10

*Tocker*  v. *Philip Morris Cos., Inc.*,
470 F.3d 481 (2d Cir. 2006) .............................................................................................11

*Wedge v. Shawmut Design and Const. Group Long Term Disability Ins. Plan*,
2013 WL 4860157 (S.D.N.Y. September 10, 2013) ..........................................................6

*Young* v. *Hartford Life & Acc. Ins. Co.*,
   09-Civ-9811(RJH), 2011 WL 4430859,  (S.D.N.Y. Sept. 23, 2011)
   *aff'd* 506 Fed.Appx. 27 (2d Cir. 2012) .................................................................................. 6, 7

**Statutes**

Employee Retirement Income Security Act of 1974,
   29 U.S.C. §1001, *et seq.* ("ERISA") ........................................................................................1

ERISA § 502(a)(1)(B) ....................................................................................................................7

ERISA §102(b), 29 U.S.C. §1022(b) ...........................................................................................10

ERISA §102; 29 U.S.C. §1022 .....................................................................................................10

ERISA §104(a); 29 U.S.C. §1024(a) ............................................................................................10

ERISA §3(1), 29 U.S.C. § 1002(1) .................................................................................................8

ERISA §401(b)(2), 29 U.S.C. §1101(b)(2) ....................................................................................8

ERISA §402(a)(1), 29 U.S.C. §1102(a)(1) ..................................................................................10

**PRELIMINARY STATEMENT**

Defendant, Aetna Life Insurance Company, respectfully submits this Memorandum of Law in support of its motion for an Order requiring that this case be reviewed under the arbitrary and capricious standard of review. In his Complaint, Plaintiff Vincent Ragone ("Ragone") seeks an award of long term disability ("LTD") benefits under the Tradition (North America) Inc. ("Tradition") Group Life and Accident and Health Insurance Plan, which is an employee welfare benefit plan governed by the Employee Retirement Income Security Act of 1974, 29 U.S.C. §1001, *et seq.* ("ERISA"). Aetna issued a group policy of insurance to Tradition ("Group Policy") to fund benefits under the Plan and also administered all claims for benefits under the Plan pursuant to a full grant of discretionary authority. In response to this Court's directive, the parties submitted a joint letter dated November 1, 2013, requesting permission to brief their respective positions regarding the appropriate standard of review applicable to this ERISA claim for benefits. The Court subsequently entered a schedule for further briefing on this issue.

The Supreme Court has held that "a denial of benefits challenged under [ERISA] must be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire and Rubber Co.* v. *Bruch*, 489 U.S. 101, 115 (1989). When a claim administrator is given discretion to determine eligibility, however, the court must review its decision with a strong measure of deference and may only reverse the administrator's actions if the court finds them to be arbitrary and capricious. *See Conkright* v. *Frommert*, 130 S.Ct. 1640, 1646 (2010). In this case, there is no dispute that the Group Policy contains the requisite grant of discretionary authority and, as such, this case must be reviewed under the arbitrary and capricious review standard.

Notwithstanding the fact that the Group Policy admittedly includes the requisite discretionary clause, plaintiff, citing no legal authority in the parties' November 1, 2013 joint letter, argued that the discretionary clause in the Group Policy must appear in the LTD Certificate of

1

Coverage, which he argues is the sole Plan document issued to participants in the LTD Plan, in order for that Plan term to be enforceable. This argument is entirely without merit for several reasons.

First, the Group Policy (which incorporates by reference the LTD Certificate of Coverage) includes information concerning the entire welfare benefit Plan's source of financing. This information is not included in the LTD Certificate of Coverage. Pursuant to ERISA, information regarding the financing of plan benefits is necessary to demonstrate that a plan was established under ERISA and thus, it must be included in the governing plan documents. Therefore, the terms of the Group Policy, including the LTD Certificate of Coverage, comprise the applicable plan documents for the LTD Plan at issue in this case. Second, in *Thurber v. Aetna Life Insurance Company*, 712 F.3d 654, 658-659 (2d Cir. 2013), the Second Circuit recently rejected the very same argument that plaintiff advances here.  Specifically, the Second Circuit in *Thurber* explicitly rejected the argument that plan participants are required to receive actual notice of an ERISA plan's discretionary clause in order for it to be enforceable. Third, despite plaintiff's counsel's representation to the contrary, the LTD Certificate of Coverage is part of the overall employee welfare benefit plan, which explicitly incorporates the terms of the Group Policy by reference, including the grant of discretionary authority.

Lastly, plaintiff's arguments concerning the fact that Aetna was not able to locate and produce Tradition's original application for coverage, which pursuant to the terms of the Plan is a part of Tradition's contract with Aetna, do not raise any issues concerning the applicable standard of review.  Aetna has provided plaintiff and the Court with a copy of the Master Application form, which reflects all of the information that would have been in the application completed by Tradition for the Plan at issue. The application form does not discuss the discretionary clause and it expressly states that in signing the application, the prospective customer (here, Tradition) agrees to be bound by the terms of the Group Policy, which includes the requisite grant of discretionary authority.

2

Given the foregoing, and as more fully discussed below, it is respectfully requested that this Court issue an Order requiring that this case be reviewed under the arbitrary and capricious standard of review.

## PROCEDURAL HISTORY

On July 2, 2013, Ragone commenced this action by filing his Complaint with the Clerk of this Court. (Doc. No. 1). On August 29, 2013, Aetna filed its Answer to Ragone's Complaint. (Doc. No. 6). During an Initial Pretrial Conference held on September 24, 2013, plaintiff informed the Hon. Katherine Polk Failla, U.S.D.J., that he intended to argue that the applicable standard of review for this ERISA benefit case should be the *de novo* review standard. Aetna disagreed with plaintiff's contention and provided plaintiff's counsel with copies of the governing Plan documents to support its position that the Court's review of this matter should be done pursuant to the arbitrary and capricious standard. Despite plaintiff's counsel's admission in open court that the Group Policy contained a clear and unequivocal grant of discretionary authority, he did not agree with Aetna's position that this matter should be reviewed under the arbitrary and capricious standard, and expressed an intention to argue for the application of the *de novo* review standard. Pursuant to Judge Failla's subsequent directive, the parties submitted a joint letter expressing their respective positions regarding the appropriate standard of review and requesting permission to brief the issue. (Doc. No. 11). By Order dated November 1, 2013, Judge Failla ordered that "[t]he parties shall each file a brief regarding the standard of review to be applied by the Court by December 4, 2013." (Doc. No. 12).

## PERTINENT PLAN TERMS

On November 10, 2005, Aetna issued to Tradition (North America) ("Tradition") a Group Life and Accident and Health Insurance Policy, Policy No. GP-818699 ("Group Policy") to fund benefits under Tradition's employer-sponsored employee welfare benefit plans, including Tradition's

3

Basic Life, Supplemental Life, Accidental Death and Dismemberment, Healthcare and Disability benefit plans (the "Policy"). (RAGONE 000001 to 000154).[1]

A. **Contents of the Policy**

On the page entitled "Policy Contents," the Group Policy states that it consists of the following:

> The Face Page, Index, this Policy Contents page, and all the provisions of Parts I and II; and
> The provisions found in the Certificate(s) listed in this section.

(15).

The "Certificate(s) listed in the "Policy Contents" section include the Certificates of Coverage for Tradition's LTD Plan, (120-152, 154), Life and Accidental Death and Dismemberment Plan, (81-119, 153), and the Supplemental LTD Plan. (49-80, 154). Specifically, the Group Policy states that the following Certificates are included:

> A "Certificate" consists of a Certificate Base document ("Cert. Base") and any Summary of Coverage ("SOC") or Certificate Rider ("Rider") which may be issued to support or amend the Cert. Base.

| Identification | Issue Date | Effective Date |
|---|---|---|
| Cert. Base: 1 | November 10, 2005 | October 1, 2005 Life/adpl |
| SOC: 1A | November 10, 2005 | October 1, 2005 |
| Cert. Base: 2 | November 10, 2005 | October 1, 2005 LTD Core |
| SOC: 2A | November 10, 2005 | October 1, 2005 |
| Cert. Base: 3 | November 10, 2005 | October 1, 2005 LTD Buy-up |
| SOC: 3A | November 10, 2005 | October 1, 2005 |
| Rider: 1 | November 10, 2005 | October 1, 2005 Life |
| Rider: 2 | November 10, 2005 | October 1, 2005 LTD |

---

[1] All references to numbers "00001" through "000154" are to the Bates Stamped pages annexed as Exhibit "A" to the Declaration of Lina M. Camacho dated December 4, 2013 (the "Camacho Dec."), which is the the Group Life and Accident and Health Insurance Policy for the Group Long Term Disability Plan ("LTD Plan"), the Group Life Insurance Plan ("Life Plan") and the Group Accidental Death and Dismemberment Plan ("AD&D Plan") for employees of Tradition (North America) Inc., effective October 1, 2005, identified by policy number GP-818699. All references to numbers "002766" through "002767" are to the Bates Stamped pages annexed as Exhibit "B" to the Camacho Dec., which is the Master Application form.

4

(*Id.*). The Certificate of Coverage applicable to plaintiff's claim for LTD benefits is identified in the Group Policy as Certificate Base 2, Summary of Coverage 2A, and Rider: 2. (120-152, 154). The second page of the applicable LTD Certificate of Coverage specifically states that it applies to benefits provided under Group Policy number GP-818699, which is the Group Policy Aetna is issued to Tradition to fund benefits under its employee welfare benefit plans. (13, 121).

B.  **Grant of Discretionary Authority**

The Group Policy includes the following language unequivocally granting Aetna discretionary authority:

> Under Section 503 of Title 1 of the Employee Retirement Income Security Act of 1974, as amended (ERISA), Aetna is a fiduciary. It has complete authority to review all denied claims for benefits under this policy. In exercising such fiduciary responsibility, Aetna shall have discretionary authority to:
>
> determine whether and to what extent employees and beneficiaries are entitled to benefits; and
> construe any disputed or doubtful terms of this policy.
>
> Aetna shall be deemed to have properly exercised such authority. It must not abuse its discretion by acting arbitrarily and capriciously. Aetna has the right to adopt reasonable:
>
> policies;
> procedures;
> rules, and
> interpretations;

of this policy to promote orderly and efficient administration. (47).

C.  **Certificate of Coverage for Tradition's LTD Plan**

The Certificates of Coverage for the Basic and Supplemental LTD Plans include the following information under the section entitled "General Provisions":

> This document describes the main features of this Plan. *Additional provisions are described elsewhere in the group contract*. If you have any questions about the terms of this Plan or about the proper payment of benefits, *you may obtain more information from your Employer or, if you prefer, from the Home Office of Aetna*. Your Employer hopes to continue this Plan indefinitely but, as with all group plans, this Plan may be changed or discontinued with respect to all or any class of employees.

(63, 134)(emphasis added).

5

D.     **Master Application Form**

The Group Policy states that the entire contract between Tradition and Aetna includes the terms in the Group Policy and the "application of the Policyholder." (33). Despite a thorough search, Aetna has been unable to locate a copy of Tradition's original application. Nevertheless, Aetna did locate and produce the Master Application form, which reflects the information that would have been in the application completed by Tradition for the Plan at issue. (2766-67). The Master Application informs Aetna's prospective customers that:

> The Entire Contract will determine the contractual provisions, including procedures, exclusions and limitations relating to the coverage and will govern in the event they conflict with any benefits comparison, summary or other description of coverage.

(2767).

In addition, the Master Application requires that the customer specifically acknowledge that it "understand[s] that [the] application will form a *part* of the Group Agreement and/or Group Policy issued by Aetna and by my signature below I agree to be bound by the terms and conditions of that Group Agreement and/or Group Policy." (2767)(emphasis added). There is no dispute that the Tradition Plans have been funded by and administered pursuant to the terms of the Group Policy since at least 2005, when the Group Policy was first issued. Indeed, plaintiff's Complaint seeks benefits pursuant to the LTD portion of the Tradition Plan.

## ARGUMENT

### POINT I
### THE GROUP POLICY CONTAINS THE APPROPRIATE
### GRANT OF DISCRETIONARY AUTHORITY

In *Firestone Tire and Rubber Co.* v. *Bruch*, 489 U.S. 101, 115 (1989), the Supreme Court held that "a denial of benefits challenged under [ERISA] must be reviewed under a *de novo* standard unless the *benefit plan* gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." (emphasis supplied); *see also Young* v. *Hartford Life & Acc. Ins. Co.*, 09-Civ-9811(RJH), 2011 WL 4430859, *7 (S.D.N.Y. Sept. 23, 2011) *aff'd* 506 Fed.Appx. 27 (2d Cir. 2012); *Hobson* v. *Metropolitan Life Ins. Co.*, 574 F.3d 75, 82 (2d Cir. 2009);

6

*Wedge v. Shawmut Design and Const. Group Long Term Disability Ins. Plan*, 2013 WL 4860157,*4 (S.D.N.Y. September 10, 2013); *Mugan v. Hartford Life Group Ins. Co.*, 765 F.Supp.2d 359, 368-369 (S.D.N.Y. 2011). When a claim administrator is given discretion to determine benefit claims, however, the court must review its decision-making with a strong measure of deference and may only reverse the administrator's actions if the court finds them to be arbitrary and capricious. *See Conkright* v. *Frommert*, 130 S.Ct. 1640, 1646 (2010), *Young*, 2011 WL 4430859 at *7 *aff'd* 506 Fed.Appx. 27; *Hobson*, 574 F.3d at 82-83; *Pagan* v. *NYNEX Pension Plan,* 52 F.3d 438, 441 (2d Cir. 1995); *Mugan*, 765 F.Supp.2d at 368-369. Here, the Group Policy for the plaintiff's employee benefit plan states that Aetna:

> has complete authority to review all denied claims for benefits under this policy. In exercising such fiduciary responsibility, Aetna shall have discretionary authority to …determine whether and to what extent employees and beneficiaries are entitled to benefits… and construe any disputed or doubtful terms of this policy.

(47).

Language similar to that used in plaintiff's employer's plan has been held sufficient to vest ERISA plan claim administrators with full discretionary authority, and require the reviewing court to employ the arbitrary and capricious review standard in its consideration of actions brought by plan participants under ERISA § 502(a)(1)(B). *See Kinstler* v. *First Reliance Standard Life Ins. Co.,* 181 F.3d 243, 251-52 (2d Cir. 1999). Indeed, at the September 24, 2013 Initial Pretrial Conference in matter, plaintiff's counsel conceded in open court that the above-referenced language in the Group Policy was sufficient to confer discretionary authority on Aetna. Accordingly, this Court should review this matter under the arbitrary and capricious standard of review.

### POINT II
### THE ENTIRE GROUP POLICY CONSTITUTES THE UNIVERSE OF RELEVANT PLAN DOCUMENTS UNDER ERISA

Notwithstanding the clear and explicit grant of discretionary authority to Aetna in the Group Policy referenced above, plaintiff, citing no legal authority, has argued that the aforementioned discretionary clause *must* appear in the LTD Certificate of Coverage issued to plan participants in

7

order for that term to be enforceable. (*See* Doc. No. 12). Indeed, plaintiff has conclusorily argued that the Group Policy, which includes the LTD Certificate of Coverage, is not the Plan, and that the LTD Certificate of Coverage alone makes up the entirety of the LTD Plan. (*Id.*). This argument is without merit, self-serving and clearly contradicts the definition of an employee welfare benefit plan under ERISA. (*Id.*).

> Pursuant to ERISA §3(1), 29 U.S.C. § 1002(1), an employee welfare benefit plan is:
>
>> Any *plan, fund or program* which… is *established or maintained* by an employer or employee organization… to the extent that such plan, fund or program was established or is maintained for the purpose of providing for its participants or their beneficiaries *through the purchase of insurance*… or otherwise, (A) medical, surgical or hospital care or benefits or benefits in the event of sickness, accident, disability or death or unemployment….

*See* ERISA §3(1), 29 U.S.C. § 1002(1) (emphasis added). In *Donovan v. Dillingham*, 688 F.2d 1367 (11th Cir. 1982), the Eleventh Circuit explained that "a plan, fund or program under ERISA is established if, from the surrounding circumstances, a reasonable person could ascertain the intended benefits, class of beneficiaries, *source of financing*, and the procedures for receiving benefits." *Id.* at 1373 (emphasis added). Here, Aetna acted as insurer and claim administrator for several parts of plaintiff's employer's employee welfare benefit plans, including Tradition's Basic Life, Supplemental Life, Accidental Death and Dismemberment and Disability benefit plans. (1 – 154). The Group Policy that Aetna issued to Tradition was intended to fund *all* of these Plans,[2] while the specific certificates of coverage for each type of benefit plan describe the benefits available, the rules applicable for enrolling in each plan, and the claim procedures for filing claims under each of these plans. The Group Policy incorporates, as part of the larger contract between Tradition and Aetna, all of the Certificates of Coverage regarding each plan offered by Tradition to its employees, as well as terms concerning premium calculation, how each plan is funded and administered, which employees

---

[2] Pursuant to ERISA §401(b)(2), 29 U.S.C. §1101(b)(2), "in the case of a plan to which a guaranteed benefit policy is issued by an insurer, the assets of such plan shall be deemed to include such policy…" Here, the Group Policy, including all of the Certificates of Coverage, is a Plan asset and, as such, is the Plan document.

8

are eligible to enroll as participants in which plans, how participants in those plans should file claims, what claims warrant payment of benefits, and how much money is payable in benefits when they are due. (1-47).[3] Without the terms included within the Group Policy, which were not included in the LTD Plan Certificate of Coverage, (i.e those terms regarding eligibility rules, financing, premium calculations and claim administration), there would be no established plan under ERISA. *See Donovan*, 688 F.2d at 1373.

      Accordingly, plaintiff's argument that the LTD Plan Certificate of Coverage is the sole Plan document for the Court to review in this case is without merit because this Certificate, standing alone, does not contain enough information to demonstrate that a valid employee welfare benefit plan was even established under ERISA. *See Donovan*, 688 F.2d at 1373.  However, when the terms in the LTD Certificate of Coverage are read along with the terms in the Group Policy (of which it is a part), it is clear that an LTD Plan was established and thus, the entire Group Policy, which includes *inter alia* the LTD Plan Certificate of Coverage, constitutes the relevant Plan document governing plaintiff's claims in this case. *See Id.*  In fact, the plaintiff's argument that he is entitled to benefits under the Plan, which were created by, and exist pursuant to, the terms of the Group Policy, but that he is not bound by other terms of the Group Policy (i.e. the discretionary clause) is unreasonable and unsupported in the law.  *Cf Scheirer* v. *NMU Pension & Welfare Plan*, 585 F. Supp. 76, 79  (S.D.N.Y. 1984)( holding that "it would be anomalous for this Court to allow plaintiff to maintain an action to recover a benefit which was created by and exists solely because of the regulations of a Plan, while at the same time to deny effect to the conditions those same regulations

---

[3] The requisite discretionary language referenced in Point I, *supra.*, is included in the terms of the Group Policy and is clearly intended to apply to *all* of Aetna's benefit determinations under *all* of the Tradition Plans funded by that Group Policy. In fact, none of the Certificates of Coverage referenced in the Group Policy contain an independent grant of discretionary authority, but each of them are incorporated into the larger Plan document by the Plan's integration clauses. (15, 63, 99, 134 ).

9

place upon receipt of that benefit."); *Burke v. PriceWaterHouseCoopers LLP Long Term Disability Plan*, 572 F.3d 76, *80 n. 4 (2d Cir. 2009)(same).

## POINT III
## RAGONE WAS NOT ENTITLED TO ACTUAL NOTICE OF THE PLAN'S GRANT OF DISCRETIONARY AUTHORITY TO AETNA

Ragone's argument that he is not bound by the terms of Tradition's Group Policy because he only received a copy of the LTD Certificate of Coverage, but not the entire Group Policy, is completely at odds with binding legal precedent in this Circuit. It is well-settled that ERISA §402(a)(1), 29 U.S.C. §1102(a)(1) requires that plan fiduciaries administer ERISA plans according to their written terms. S*ee Curtiss-Wright Corp.* v. *Schoonejongen*, 514 U.S. 73, 83 (1995)(quoting congressional report, stating "'[a] written plan is to be required in order that every employee *may, on examining the plan documents*, determine exactly what his rights and obligations are under the plan.'" (italics in original)). Congress did not, however, add an additional requirement that ERISA plan participants actually receive the governing plan documents in order for them to be enforceable. In fact, ERISA only requires that a plan administrator issue an SPD to plan participants — not the actual plan documents.  *See* ERISA §104(a); 29 U.S.C. §1024(a). By definition, the SPD does not contain all of the plan terms.  *See* ERISA §102; 29 U.S.C. §1022; *CIGNA Corp.* v. *Amara*, 131 S.Ct. 1866, 1879 (2011).  Notably, the identification of a claim administrator that has been granted discretionary authority to determine claims under the plan is *not* one of the enumerated disclosures required by ERISA §102(b), 29 U.S.C. §1022(b).

In addition, and perhaps more importantly, in *Thurber* v. *Aetna Life Insurance Company,* 712 F.3d 654, 658-659 (2d Cir. March 13, 2013), the Second Circuit recently rejected an argument *identical* to that which plaintiff now advances. In *Thurber,* the plaintiff similarly argued that the district court's review should be *de novo* because she did not receive a copy of the Group Policy, which undeniably included the requisite discretionary clause. *Id.* at 658-659. There, like here, the plaintiff argued that she had only received the Booklet-Certificate (i.e. Certificate of Coverage) for the LTD

10

plan, which did not contain the plan's discretionary clause. Thurber argued that because the plan document she received did not include the discretionary clause, the court's review of her claim must be done pursuant to the *de novo* review standard.  The Second Circuit disagreed and held, in a precedential ruling, that the case was properly reviewed under the arbitrary and capricious review standard because the grant of discretion to Aetna appeared in the plan documents (i.e. the Group Policy). *Id.* The Second Circuit further held that neither the ERISA statute nor governing Department of Labor regulations require a plan participant to receive notice of this grant of discretion to the claim fiduciary in order for it to be enforceable. *Id.* The Second Circuit explained its determination as follows:

> There may be strong arguments that plan provisions that affect the basic terms of the plan, or ones that affect what an applicant must do to become eligible for benefits, should be conveyed directly to plan beneficiaries and not buried in a lengthy and technical contract. However, those arguments do not apply to a provision that is effectively addressed not to the beneficiary, but only to a reviewing court that must act only after an application has been denied.

*Id.* at 659-660; *see also Tocker* v. *Philip Morris Cos., Inc.*, 470 F.3d 481, 488-89 (2d Cir. 2006).

Accordingly, plaintiff's argument that this matter must be reviewed *de novo* because he did not receive the Plan documents that indisputably include sufficient language to warrant a deferential review ignores binding legal precedent that is directly on point and, as such, must be rejected by this Court.

### POINT IV
### THE LTD CERTIFICATE OF COVERAGE INCORPORATES THE TERMS OF THE GROUP POLICY BY REFERENCE

In the parties' joint letter to the Court dated November 1, 2013, plaintiff argued that "[w]hile the [LTD Plan Certificate of Coverage] is part of the [Group Policy], the [Group Policy] is not part of the [LTD Plan Certificate of Coverage]." (Doc. No. 12). Plaintiff then argued that the Group Policy is not part of the Plan and must be ignored. Plaintiff's tortured construction of the Plan documents cannot be sustained. Indeed, it is not even consistent with the language of the very

11

documents upon which plaintiff rests his contentions. Specifically, the LTD Certificate of Coverage clearly states that while it "describes the main features of [the LTD] Plan [,]…[a]dditional provisions [of the Plan] are described elsewhere in the [Group Policy]." (63, 134). Clearly, the LTD Plan Certificate of Coverage informs LTD Plan participants that their coverage under the Plan is subject to both the terms included in the Certificate of Coverage and the Group Policy and thus, incorporates those Group Policy terms/provisions by reference. (63, 134). In fact, the LTD Plan Certificate of Coverage informs Plan Participants that "if [they] have any questions about the terms of [the LTD] Plan[s] or about the proper payment of benefits, [they] may obtain more information from [their] Employer or … from the Home Office of Aetna." (63, 134). Therefore, although Plan participants need not receive notice of the requisite discretionary clause under ERISA, the LTD Certificate of Coverage clearly informs all LTD Plan participants that there are other terms in the Group Policy that are applicable to their coverage under the LTD Plan.  In addition, the LTD Certificate of Coverage similarly informs Plan participants that they may obtain more information from Tradition or Aetna regarding the "additional provisions" located in the Group Policy (i.e. the requisite discretionary clause). (63, 134).  Accordingly, plaintiff's argument that the LTD Certificate of Coverage does not incorporate the terms of the Group Policy is without merit and contrary to the clear and unambiguous terms of the LTD Certificate of Coverage. (*Id.*).

Finally, to the extent that plaintiff may argue that he did not receive the Group Policy until after litigation commenced, his position fares no better. *See Raybourne v. Cigna Life Ins. Co. of New York*, 576 F.3d 444, 448 (7th Cir. 2009)(applying an arbitrary and capricious review standard where plaintiff argued that despite his earlier requests for the governing plan documents he did not receive the document including the plan's discretionary clause until after the ligation was commenced).

### POINT V
### TRADITION'S APPLICATION FOR COVERAGE TO AETNA DOES NOT HAVE ANY EFFECT ON THE GRANT OF DISCRETIONARY AUTHORITY IN THE GROUP POLICY

As referenced above, the Group Policy states that the entire contract between Tradition and Aetna consists of the terms in the Group Policy, the Certificates of Coverage and the "application of the Policyholder." (33). Despite a thorough search, Aetna informed plaintiff's counsel that it was unable to locate a copy of Tradition's original application. In response, plaintiff's counsel informed the Court in his portion of the joint letter dated November 1, 2013 that:

> To date, Aetna has been unable to find the application completed by Ragone's employer, which by its terms forms part of the Master Contract.

Although plaintiff's counsel did not elaborate further on the significance of this statement, it is Aetna's position that the application does not change or modify the clear terms of the Group Policy and any argument to the contrary is based on surmise and conjecture.

While Aetna was unable to locate the specific application completed by Tradition, it did produce Aetna's Master Application form, which reflects the information that would have been in the application completed by Tradition for the Plan at issue. (2766-67). Aetna's application form does not include any discussion of or reference to the Plan's grant of discretionary authority to Aetna. Rather, the application form informs Aetna's customers that:

> The *Entire Contract* will determine the contractual provisions, including procedures, exclusions and limitations relating to the coverage and will govern in the event they conflict with any benefits comparison, summary or other description of coverage.

(2767). (emphasis added).

In addition, the Master Application requires that the customer specifically acknowledge that it "understand[s] that [the] application will form a *part* of the Group Agreement and/or Group Policy issued by Aetna" and "agree to be bound by the terms and conditions of that Group Agreement and/or Group Policy." (2767)(emphasis added). Accordingly, by completing the Master Application, which Tradition must have done in order for Aetna to have issued the Group Policy, Tradition understood that the discretionary authority clause, which undeniably appears in the Group Policy, would be part of the Plan.

13

## CONCLUSION

For the foregoing reasons, this Court should grant Aetna's motion and order that this case be reviewed under the arbitrary and capricious standard of review.

Dated: New York, New York
December 4, 2013

Respectfully Submitted,

s/_____
Michael H. Bernstein
Matthew P. Mazzola
SEDGWICK LLP
225 Liberty Street, 28th Floor
New York, NY 10281-1008
Tel. (212) 422-0202
Fax (212) 422-0925
*Attorneys for Aetna Life Insurance Company*

14

## **CERTIFICATE OF SERVICE**

I, Matthew P. Mazzola, hereby certify and affirm that a true and correct copy of the attached **MEMORANDUM OF LAW IN SUPPORT OF AETNA'S MOTION REGARDING THE APPROPRIATE STANDARD OF REVIEW** was served via ECF Regular Mail on this 4th day of December, 2013, upon the following:

                                                  s/_____
                                                  Matthew P. Mazzola (MM-7427)

Dated:    New York, New York
               December 4, 2013

15