RIEMER & ASSOCIATES LLC
Attorneys for Plaintiff
60 East 42nd Street, Suite 1750
New York, New York  10165
(212) 297-0700
sriemer@riemerlawfirm.com

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
VINCENT RAGONE,                                               13 CV 04604 (KPF)(KNF)

                          Plaintiff,                         ECF Case

    -against-

AETNA LIFE INSURANCE COMPANY,

                          Defendant.
-----------------------------------------------------------------X

                      PLAINTIFF'S MEMORANDUM OF LAW
                          IN SUPPORT OF MOTION TO
                      DETERMINE STANDARD OF REVIEW

Of Counsel:

Scott M. Riemer
Sharon H. Lee

TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................................... ii

PRELIMINARY STATEMENT ................................................................................................. 1

PROCEDURAL HISTORY ......................................................................................................... 2

ARGUMENT ................................................................................................................................. 4

    I.    THE DEFAULT STANARD OF REVIEW IS *DE NOVO* ......................................... 4

    II.    THE BURDEN IS ON AETNA TO INVOKE THE ARBITRARY
           AND CAPRICIOUS STANDARD OF REVIEW ............................................ 4

    III.    AETNA CANNOT SATISFY ITS BURDEN BECAUSE THE
           GROUP POLICY IS NOT CLEARLY AND UNAMBIGUOUSLY A
           PLAN DOCUMENT ........................................................................................ 5

           A.    THE GROUP POLICY DOES NOT IDENTIFY ITSELF AS
                THE PLAN DOCUMENT ...................................................................... 6

           B.    THE LANGUAGE OF THE GROUP POLICY AND
                CERTIFICATE SUGGESTS THAT THE CERTIFICATE IS
                THE PLAN DOCUMENT ...................................................................... 6

           C.    THE GROUP POLICY IS NOT THE PLAN DOCUMENT
                BY MEANS OF INCORPORATION INTO THE CERTIFICATE ............. 7

           D.    THE GROUP POLICY IS A FUNDING VEHICLE FOR THE
                PLAN, NOT THE PLAN ITSELF ........................................................... 8

           E.    THE GROUP POLICY IS NOT THE PLAN DOCUMENT
                BECAUSE IT WAS DESIGNED AS A PRIVATE
                DOCUMENT BETWEEN AETNA AND TRADITION,
                AND NOT DESIGNED TO BE DISTRIBUTED TO PLAN
                PARTICIPANTS ................................................................................... 8

           F.    AETNA REPRESENTED THAT THE CERTIFICATE WAS
                THE PLAN DOCUMENT ...................................................................... 9

CONCLUSION ............................................................................................................................ 11

# TABLE OF AUTHORITIES

*CIGNA Corp. v. Amara*, 131 S. Ct. 1866 (2011) ............................................................................. 4, 8

*Durham v. Prudential Ins. Co. of Am., et al.*, 890 F. Supp. 2d 390 (S.D.N.Y. 2012) ........................ 4

*Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101 (1989) ............................................................. 4

*Kinstler v. First Reliance Standard Life Ins. Co.*, 181 F.3d 243 (2d Cir. 1999) ................................. 4

*Krauss v. Oxford Health Plans Inc.*, 517 F.3d 613 (2d Cir. 2008) ...................................................... 4

*Lee v. Kaiser Found. Health Plan Long Term Disability Plan*, 812 F. Supp. 2d 1027 (N.D. Cal. 2011) ........... 8

*Nichols v. Prudential Ins. Co. of Am.*, 406 F.3d 98 (2d Cir. 2005) ..................................................... 4

*Sharkey v. Ultramar Energy Ltd.*, 70 F.3d 226 (2d Cir. 1995) ........................................................... 4

*Thurber v. Aetna Life Insurance Co.*, 712 F.3d 654 (2d Cir. 2013) .............................................. 10-11

*Wenger v. Prudential Ins. Co. of Am.*, 2013 U.S. Dist. LEXIS 142210 (S.D.N.Y. Sept. 26, 2013) ................ 4-5

## FEDERAL STATUTES AND REGULATIONS

Employee Retirement Income Security Act of 1974 ("ERISA"), U.S.C. §1001, *et seq.* ............................. 2

29 C.F.R. §2560.503-1(h)(2)(iii) ......................................................................................................... 9

29 C.F.R. §2560.503-1(m)(8) .............................................................................................................. 9

29 C.F.R. §2560.503-1(g)(1)(ii) .......................................................................................................... 9

29 U.S.C. §1001 .................................................................................................................................. 1

29 U.S.C. §1024(b)(2) ........................................................................................................................ 8

29 U.S.C. §1024(b)(4) ........................................................................................................................ 9

PRELIMINARY STATEMENT

Plaintiff Vincent Ragone ("Ragone") respectfully submits this memorandum of law for an order declaring the appropriate standard of review to be *de novo*. The standard of review in this action is *de novo* because the Tradition (North America) Inc. Long-Term Disability ("LTD") Certificate of Coverage ("Certificate")(Ex. 1) does not contain language granting defendant Aetna Life Insurance Company ("Aetna") with discretionary authority. This is the document that Aetna represented to plaintiff to be the Plan document in its capacity as an ERISA Plan fiduciary during the claim process. Acknowledging that the Certificate lacks discretionary language, Aetna now argues that the Tradition Group Life and Accident and Health Insurance Policy ("Group Policy")[1] is the Plan document in an attempt to invoke the arbitrary and capricious standard. But, Aetna cannot invoke the standard because Aetna cannot satisfy its burden of demonstrating that the Group Policy is clearly and unambiguously the Plan document as mandated by the Supreme Court in *CIGNA Corp. v. Amara*.

Aetna cannot satisfy its burden because the Court will need to wade into semantic swamps in order to conclude that the Group Policy is the Plan document, which is precisely what the Second Circuit held should not be done. Here, the documents in dispute and Aetna's own actions demonstrate that the Certificate is the Plan document: (A) the Group Policy does not identify itself as the Plan document; (B) the language of the Group Policy and Certificate suggests that the Certificate is the Plan document; (C) the Group Policy is not the Plan document by means of incorporation into the Certificate; (D) the Group Policy is a funding vehicle for the Plan, not the Plan itself; and (E) the Group Policy is not the Plan document because it was designed as a private

---

[1] It is anticipated that Aetna will be submitting the Group Policy (RAGONE 000001-154) as an Exhibit to its cross-motion to determine the standard of review.

1

document between Aetna and plaintiff's former employer, Tradition (North America) Inc. ("Tradition"), and not designed to be distributed to plan participants.

Moreover, the Court should review Aetna's new argument with great skepticism because the Group Policy is merely a document that Aetna pulled out from under its sleeve only after the commencement of this litigation in its capacity as a self-interested litigant. It is telling that Aetna's new argument directly contradicts its prior representation to plaintiff during the claim process as an ERISA Plan fiduciary.

## PROCEDURAL HISTORY

This is an action under the Employment Retirement Income Security Act of 1974, 29 U.S.C. §1001, *et seq.* ("ERISA"), where Aetna wrongfully discontinued plaintiff's LTD benefits under the Tradition LTD Plan. Aetna initially determined that plaintiff was disabled from his own occupation due to coronary artery disease and paid plaintiff LTD benefits from February 2008 until his benefits were discontinued in August 2012. On January 29, 2013, plaintiff appealed Aetna's discontinuation. The appeal was denied.

On May 6, 2013, plaintiff requested Aetna to provide a copy of the post-denial claim file, including a complete copy of the LTD Plan. (Ex. 2, 5/6/13 Letter from Riemer & Associates to Aetna). On June 17, 2013, Aetna provided plaintiff with the post-denial claim file, including the Certificate that Aetna represented to be the LTD Plan. (Ex. 1).

On July 1, 2013, plaintiff initiated the instant action in the Southern District of New York after exhausting all administrative remedies.

On September 12, 2013, the parties participated in a Meet and Confer where the parties discussed, *inter alia*, the appropriate standard of review to be applied in this action. During the teleconference, the undersigned counsel informed counsel for Aetna that the appropriate standard of review in this action is *de novo*, referring to the lack of discretionary language in the Certificate

provided by Aetna. Counsel for Aetna disagreed and asserted that the arbitrary and capricious standard of review should apply. In doing so, counsel for Aetna represented that the Group Policy was the Plan document, as opposed to the Certificate provided by Aetna during the claim process. The Group Policy, however, had never been previously provided to plaintiff by Aetna despite his request for a complete copy of the LTD Plan. The undersigned counsel requested counsel for Aetna to provide him with a copy of the Group Policy for his review.

On September 13, 2013, counsel for Aetna provided the undersigned with a copy of the Group Policy representing that it was the "plan document." (Ex. 3, Emails between Riemer & Associates and Counsel for Aetna). But, the copy provided was incomplete.

On September 24, 2013, the parties appeared before the Court for an Initial Pretrial Conference. The Court instructed the parties to submit a joint letter informing the Court whether or not the parties intended to brief the standard of review issue after plaintiff had the opportunity to review the complete copy of the Group Policy.

Following the conference, the undersigned counsel requested a complete copy of the Group Policy from counsel for Aetna. On October 1, 2013, counsel for Aetna advised that his client had not yet provided him with a complete copy of the Group Policy. (Ex. 3). On October 10, 2013, counsel for Aetna provided the undersigned with the Group Policy in response to his request for a complete copy. (Id.). The copy provided, however, was again incomplete. The Group Policy provides:

> This policy <u>and</u> application of the Policyholder are the entire contract. A copy of the application is attached.

(RAGONE 000033)(emphasis added). The undersigned requested a copy of the application from counsel for Aetna. To date, the "application" has not been produced.

On November 1, 2013, the parties submitted a joint letter informing the Court of their intent to brief the standard of review issue. (Ex. 4, 11/1/13 Joint Letter to the Court).

3

ARGUMENT

I.  THE DEFAULT STANDARD OF REVIEW IS *DE NOVO*

A benefit determination is reviewed *de novo*, unless the plan vests the administrator with discretionary authority to determine eligibility for benefits or to construe the plan. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). "A reservation of discretion need not actually use the words 'discretion' or 'deference' to be effective, but it must be clear." *Krauss v. Oxford Health Plans Inc.*, 517 F.3d 613, 622 (2d Cir. 2008) (quoting *Nichols v. Prudential Ins. Co. of Am.*, 406 F.3d 98, 108 (2d Cir. 2005)). The Second Circuit warned it will not search in "semantic swamps for arguable grants of discretion." *Kinstler v. First Reliance Standard Life Ins. Co.*, 181 F.3d 243, 252 (2d Cir. 1999).

The Supreme Court in *CIGNA Corp. v. Amara*, 131 S. Ct. 1866, 1877-78 (2011), modified the analysis of interpreting plan terms. To be enforceable, a term must be <u>in</u> the Plan document itself, rather than in an ancillary document such as a summary plan description. *Id.* Consistent with this, courts post-*Amara* have found a grant of discretionary authority in a non-plan document to be unenforceable. *See, e.g.*, *Wenger v. Prudential Ins. Co. of Am.*, 2013 U.S. Dist. LEXIS 142210, *17 (S.D.N.Y. Sept. 26, 2013) (determining the term in the SPD concerning discretionary authority was unenforceable); *Durham v. Prudential Ins. Co. of Am., et al.*, 890 F. Supp. 2d 390 (S.D.N.Y. 2012).

II.  THE BURDEN IS ON AETNA TO INVOKE THE ARBITRARY AND CAPRICIOUS STANDARD OF REVIEW

It is the plan administrator's burden to establish the predicates for invoking the arbitrary and capricious standard of review. *Kinstler*, 181 F.3d at 249; *Sharkey v. Ultramar Energy Ltd.*, 70 F.3d 226, 230 (2d Cir. 1995) ("[t]he party claiming deferential review should prove the predicate that justifies it."). Because the plan administrator has the burden of proving discretion, ambiguities are resolved against the administrator. *Nichols*, 406 F.3d at 108 (quoting *Kinstler*, 181 F.3d at 251-52) (internal

4

citations omitted).  Indeed, in a recent case involving the determination of the applicable standard of review, the court determined that the plan administrator failed to meet this burden where it was left to "connect the dots."  *See, e.g.*, *Wenger*, 2013 U.S. Dist. LEXIS 142210, at *17 ("The Court has spent a considerable amount of time sifting through the purported LTD Plan documents and declarations submitted by the parties.  On the issue of which documents comprise the LTD Plan, the Court has endeavored to connect the dots (to the extent they can be connected).  When courts must connect the dots, however, it is usually a problem for the party (in this case, Defendant) with the burden of proof.").

Here, Aetna asserts the arbitrary and capricious standard solely by invoking language[2] found in the Group Policy.  (Ex. 4).  While plaintiff concedes that the cited language reflects a grant of discretionary authority (if it were in the Plan document), Aetna cannot satisfy its burden because the Group Policy is not clearly and unambiguously a Plan document.

### III.   AETNA CANNOT SATISFY ITS BURDEN BECAUSE THE GROUP POLICY IS NOT CLEARLY AND UNAMBIGUOUSLY A PLAN DOCUMENT

Aetna cannot satisfy its burden because Aetna cannot demonstrate that the Group Policy is <u>clearly</u> and <u>unambiguously</u> the Plan document.  The Court is left to connect the dots and wade into semantic swamps because: (A) the Group Policy does not identify itself as the Plan document; (B) the language of the Group Policy and Certificate suggests that the Certificate is the Plan document; (C) the Group Policy is not the Plan document by means of incorporation into the Certificate; (D) the Group Policy is a funding vehicle for the Plan, not the Plan itself; (E) the Group Policy is not the Plan document because it was designed as a private document between Aetna and Tradition, and

---

[2] The Group Policy provides:  "Aetna shall have discretionary authority to: determine whether and to what extent employees and beneficiaries are entitled to benefits; and construe any dispute or doubtful terms of this policy."  (RAGONE 000047).

not designed to be distributed to plan participants; and (F) Aetna represented that the Certificate was the Plan document.

### A. THE GROUP POLICY DOES NOT IDENTIFY ITSELF AS THE PLAN DOCUMENT

Aetna now claims that the Group Policy is the Plan document, but there is no evidence of that. Indeed, neither the Group Policy, nor the Certificate states that the Group Policy is the Plan document. To substantiate Aetna's new claim, the Court is forced to connect the dots and wade into semantic swamps.

This is in contrast to the policies of other insurers, who have made this very clear by way of utilizing "clear" and "unambiguous" control language.

| Insurer | Control Language | Page |
|---|---|---|
| CIGNA Life Insurance Company of New York | "The Policy has been issued in conjunction with an employee welfare benefit plan subject to the Employee Retirement Income Security Act of 1974 ("ERISA"). This Policy is a Plan document within the meaning of ERISA." | 19 |
| Hartford Life Insurance Company | "The benefits described in your booklet-certificate (Booklet) are provided under a group insurance policy (Policy) issued by the Hartford Life Insurance Company (Insurance Company) and are subject to the Policy's terms and conditions. The Policy is incorporated into, and forms a part of, the Plan. The Plan has designated and named the Insurance Company as the claims fiduciary for benefits provided under the Policy. The Plan has granted the Insurance Company full discretion and authority to determine eligibility for benefits and to construe and interpret all terms and provisions of the Policy." | 71 |
| UNUM Life Insurance Company of America | "The summary plan description and the policy constitute the Plan. Benefit determinations are controlled exclusively by the policy, your certificate of coverage and the information contained in this document." | 107 |

(*See, e.g.*, Ex. 5, pp. 19, 71, 107).

### B. THE LANGUAGE OF THE GROUP POLICY AND CERTIFICATE SUGGESTS THAT THE CERTIFICATE IS THE PLAN DOCUMENT

Rather than supporting Aetna's new assertion that the Group Policy is the Plan document, the language of the Group Policy and Certificate suggests that the Certificate is the Plan document. In describing itself, the Certificate at all times refers to itself as "This Plan," and never refers to the Group Policy as "the Plan." (*See, e.g.*, Ex. 1, pp. 3, 16). Likewise, the Group Policy at all times refers to itself merely as "This policy," and never refers to itself as "this Plan." (*See, e.g.*, RAGONE 000015).

Aetna may try to assert that the following language of the Certificate supports the fact that at least some of the provisions of the Group Policy are part of the Plan:

> This document describes the main features of this Plan. Additional provisions are described elsewhere in the group contract. If you have any questions about the terms of this Plan or about the proper payment of benefits, you may obtain more information from your Employer or, if you prefer, from the Home Office of Aetna.

(Ex. 1, p. 16)(emphasis added). But, all this indicates is that relevant provisions are also described in the group contract. It does not indicate that the "additional provisions" are "additional <u>Plan</u> provisions."

      C.  THE GROUP POLICY IS NOT THE PLAN DOCUMENT BY
          MEANS OF INCORPORATION INTO THE CERTIFICATE

While the Group Policy admittedly incorporates the terms of the Certificate (RAGONE 000015), the Certificate does not incorporate the terms of the Group Policy. This is not just an idle play of logic. By incorporating the terms of the Certificate (and therefore the Plan), the Group Policy does not become part of the Plan. The Group Policy is <u>more</u> than the Plan (*i.e.*, it is a funding vehicle, a statement of rights by and between Aetna and Tradition, and a statement of the terms of the Plan). The only way for the Group Policy to become part of the Plan is if the Certificate incorporates the terms of the Group Policy <u>within</u> the terms of the Plan. As written, the

Group Policy contains terms <u>outside</u> the terms of the Plan and is, therefore, unenforceable under *Amara*.[3]

## D. THE GROUP POLICY IS A FUNDING VEHICLE FOR THE PLAN, NOT THE PLAN ITSELF

Rather than being the Plan document, the Group Policy is a contract by and between Aetna and Tradition for purposes of funding several welfare benefits on behalf of employees of Tradition, including the LTD Plan, the Supplemental LTD Plan, and the Life Plan.  In this respect, Aetna has admitted that "benefits under the Plan are funded pursuant to Group Policy No. GP-818699."  See Answer, ¶9.  The Group Policy is, therefore, analogous to a trust fund document in the context of a pension plan.  Both are the funding vehicles (and outside) of the underlying plan.

## E. THE GROUP POLICY IS NOT THE PLAN DOCUMENT BECAUSE IT WAS DESIGNED AS A PRIVATE DOCUMENT BETWEEN AETNA AND TRADITION, AND NOT DESIGNED TO BE DISTRIBUTED TO PLAN PARTICIPANTS

Functionally, for a document to be a plan document, it must be a document intended to be distributed to plan participants.  This is because ERISA requires the administrator to make the Plan document available to plan participants in at least four instances:

<u>First</u>, 29 U.S.C. §1024(b)(2), provides, "[t]he administrator shall make copies of the latest updated summary plan description . . . <u>or other instruments under which the plan was established or is operated available for examination by any plan participant</u> or beneficiary in the principal office of the administrator and in such other places as may be necessary to make available all pertinent

---

[3] It is anticipated that Aetna will proffer cases for the proposition that courts have determined that "Master" or "umbrella" policies, similar to the Group Policy in the present case, constitute the Plan document.  But, these cases were decided pre-*Amara* or post-*Amara* and fail to give consideration to the Supreme Court's decision in *Amara*.  *See, e.g.*, *Lee v. Kaiser Found. Health Plan Long Term Disability Plan*, 812 F. Supp. 2d 1027 (N.D. Cal. 2011)(determining that the "umbrella" policy constitutes the Plan document without considering the Supreme Court's decision in *Amara*).

8

information to all participants (including such places as the Secretary may prescribe by regulations)." (emphasis added).

Second, 29 U.S.C. §1024(b)(4), provides, "[t]he administrator shall, upon written request of any participant or beneficiary, furnish a copy of the latest updated summary plan description . . . <u>or other instruments under which the plan is established or operated</u>." (emphasis added).

Third, if an administrator denies a participant's claim it is required to notify the claimant of "the specific plan provisions on which the determination is based." 29 C.F.R. §2560.503-1(g)(1)(ii).

Fourth, a participant may write the administrator and request copies of all documents relied on by the administrator in making the adverse benefit determination." 29 C.F.R. §2560.503-1(h)(2)(iii) and (m)(8). This includes the plan document.

The provisions of the Group Policy reveal that Aetna never intended that the Group Policy be distributed or made available to plan participants. Rather, the Group Policy contemplates that the only document to be made available to plan participants is the Certificate. The Group Policy provides:

> Aetna will provide the Policyholder with either a supply of paper copies or electronic certificates. The Policyholder shall distribute or otherwise make the certificates available to each insured employee. The insurance in force will be set forth. Statements as to whom benefits are payable will appear. Any applicable Conversion Privilege will also be described.

(RAGONE 000031). Indeed, the Certificate uses the term "you" and is addressed to the plan participants, but the Group Policy is not.

The fact that the Group Policy is a private document between Aetna and Tradition to fund the LTD Plan, and was not designed to be made available to plan participants (see *infra*), militates against it being considered the Plan document.

    F.  AETNA REPRESENTED THAT THE CERTIFICATE WAS THE PLAN DOCUMENT

9

Aetna's assertion that the Group Policy is the Plan document only was made <u>after</u> this litigation commenced. Prior to this litigation, plaintiff requested a copy of the Plan document from Aetna. (Ex. 2). In response to the request, Aetna provided plaintiff with a copy of the Certificate, representing that it was the Plan document produced as part of the post-denial claim file (*Id.*). The Certificate was also produced as part of the administrative record (RAGONE 000050-70).[4]

Further mitigating against a finding that the Group Policy is the Plan document, Aetna has had great difficulty even finding the Group Policy. Indeed, Aetna had to conduct a search in order to locate a complete copy of the Group Policy, but even then was ultimately unable to provide plaintiff with a complete copy. The Group Policy provides:

> This policy and application of the Policyholder are the entire contract. A copy of the application is attached.

(RAGONE 000033). To date, counsel for Aetna has not provided plaintiff with the application completed by Tradition, which by its terms forms part of the Group Policy.

Aetna may assert that the instant action is governed by the recent Second Circuit decision in *Thurber v. Aetna Life Insurance Co.*, 712 F.3d 654 (2d Cir. 2013). In *Thurber*, the Second Circuit held that <u>actual</u> notice of a Plan document was not a requirement before the arbitrary and capricious standard of review could be applied. Rather, the only requirement was that the Plan document contain discretionary language (*Id.* at 659), and that "the chosen words must clearly convey the administrator's intent." (*Id.* at 658).

---

[4] Aetna's representation to plaintiff in response to his request for the Tradition Life Insurance Plan ("Life Insurance Plan") further supports that the Group Policy is <u>not</u> the Plan document. On November 9, 2012, plaintiff requested Aetna to provide a copy of the post-denial claim file with respect to the discontinuation of his Waiver of Premium benefits, including a copy of the Tradition Life Insurance Plan. (Ex. 6). On November 21, 2012, Aetna provided plaintiff with the post-denial claim file, including the Life Insurance Plan Certificate of Coverage ("Life Insurance Certificate"), as opposed to the Group Policy. (Ex. 7). In doing so, Aetna represented that the Life Insurance Certificate was the Plan document. This is important because Aetna's own action contradicted its argument that the Group Policy is the Plan document.

*Thurber,* however, is not controlling.  Here, plaintiff is not asserting *de novo* review because of lack of actual notice.  Rather, plaintiff is using Aetna's failure to furnish the Group Policy prior to litigation as a reason for the Court to be skeptical of Aetna's <u>new</u> assertion that the Group Policy is the Plan document.  Aetna represented to plaintiff that the Certificate is the Plan document.  The Court should take Aetna at its word when it was serving as an ERISA Plan fiduciary during the claim process, rather than its new assertion as a self-interested litigant.

CONCLUSION

For the foregoing reasons, this Court should declare the appropriate standard of review to be *de novo*.

Dated: New York, New York
December 4, 2013

Respectfully submitted,

/s/ Scott M. Riemer
Scott M. Riemer (SR5005)
Riemer & Associates LLC
60 East 42nd Street, Suite 1750
New York, New York 10165
(212) 297-0700
sriemer@riemerlawfirm.com

CERTIFICATE OF SERVICE

I certify that on December 4, 2013, I served a true and complete copy of the foregoing Plaintiff's Memorandum of Law in Support of Motion to Determine Standard of Review by transmitting the same by electronic mail to the following individuals at the e-mail addresses indicated:

Michael H. Bernstein, Esq.
Sedgwick LLP
225 Liberty Street, 28th Floor
New York, New York 10004-2400
michael.bernstein@sedgwicklaw.com
*Attorneys for Defendants*

I also certify that this document filed through the ECF system will be sent electronically to all registered participants on December 4, 2013.

Dated:  New York, New York
        December 4, 2013

                                        /s/Scott M. Riemer
                                        Scott M. Riemer (SR5005)